UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM L. MURACO,<br><br>                Petitioner,<br><br>v.<br><br>KIM JONES, Warden, ICI-O; IDAHO COMISSION OF PARDONS AND PAROLE; IDAHO DEPARTMENT OF CORRECTIONS,<br><br>                Respondents. | Case No. 3:07-CV-144-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this habeas corpus action are several motions filed by the parties that are ripe for adjudication. All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket Nos. 13, 14, & 15). The Court has reviewed the parties' briefing and the record in this case, including the state court record, and determines that oral argument is unnecessary. Accordingly, the following Order is entered.

**MEMORANDUM DECISION AND ORDER  1**

# RESPONDENTS' MOTION FOR SUMMARY JUDGMENT

## A. Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). Judicial notice will be taken of the court docket in the underlying state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Petitioner's case was filed after April 24, 1996, making it subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). In order to obtain federal habeas corpus relief from a state court judgment under AEDPA, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**MEMORANDUM DECISION AND ORDER 2**

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

To prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Id.*, 530 U.S. at 166. However, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

**MEMORANDUM DECISION AND ORDER 3**

B.  Background

In 1994, Petitioner was convicted of lewd conduct with a minor under sixteen years of age. He was sentenced to a term of ten years fixed, with life indeterminate. (State's Lodging A-1, pp. 90-91.) Petitioner's conviction and sentence were affirmed by the Supreme Court of Idaho on October 26, 1998. (State's Lodging B-13.)

On December 22, 1998, Petitioner filed a federal habeas corpus petition challenging his conviction and sentence. (*See Muraco v. Foster*, Case No. CV-98-512-S-EJL, Docket No. 5.) Petitioner's case was eventually dismissed with prejudice, and his certificate of appealability was denied by the district court and the Ninth Circuit Court of Appeals. (*Id.*, Docket Nos. 27, 40, & 41.)

The current federal Habeas Corpus Petition arises from the denial of parole to Petitioner by the Idaho Commission of Pardons and Parole (ICPP). Petitioner claims he is a Canadian citizen. The United States Immigration and Naturalization Service (INS) issued a detainer against Petitioner, which meant that he was to be deported to Canada immediately upon parole. The ICPP granted a tentative parole date, relying upon the detainer. The INS later cancelled the detainer because it determined Petitioner had dual citizenship in Canada and the United States, and it is unlawful for the United States to deport one of its own citizens. The ICPP was unwilling to parole Petitioner to the United States, and voided Petitioner's tentative parole approval.

**MEMORANDUM DECISION AND ORDER  4**

On December 10, 2004, Petitioner filed a state habeas corpus petition asserting that the voiding of his parole violated state law and his constitutional rights. (State's Lodging F-1, pp. 1-7.) The state district court dismissed the petition, and the Court of Appeals affirmed the lower court's order of dismissal. (State's Lodgings F-1, pp. 54-65 & G-4.) The Supreme Court of Idaho denied the petition for review. (State's Lodging G-7.)

The Petition for Writ of Habeas Corpus now pending before this Court was filed by Petitioner on March 28, 2007, followed by a Supplemental Petition filed on August 13, 2007. (Docket Nos. 1 & 2.) This Court previously dismissed Claims 8, 10, and Supplemental Claim B. (Docket No. 36.) Three claims remain, which are two claims for denial of equal protection (Claims 1 & 2) and one ex post facto violation (Claim 3). Respondents move for judgment as a matter of law on these remaining claims.

**C.     Discussion**

   **1)     Claim 1 - Equal Protection Based on National Origin**

In Claim 1, Petitioner alleges that his equal protection rights were violated when he was denied parole on the basis of national origin. Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

The Idaho Court of Appeals denied Petitioner's equal protection claim under a rational basis test, and not under strict scrutiny. This Court must first determine whether this decision – that strict scrutiny did not apply in Petitioner's case – was an unreasonable application of federal law, or was based on an unreasonable determination of the facts from the evidence in the record. *See* § 2254(d). If this Court finds that the Court of Appeals' decision is correct in not having applied strict scrutiny, then this Court must review the Court of Appeals' application of the rational basis test.

      a)     **Review of Court of Appeals' determination that strict scrutiny does not apply**.

The Idaho Court of Appeals framed Petitioner's claim as follows:

> Muraco argues that the Commission has created a classification based on national origin because, by denying him parole, it imposed different standards on citizens and non-citizens. That is, he asserts, a person born in another country must be deportable to be released because the Commission will not permit such an individual to be paroled to a jurisdiction within the United States.

**MEMORANDUM DECISION AND ORDER 6**

(State's Lodging G-4, p. 3.)

Upon its review of the record, the Idaho Court of Appeals found no facts in the record supporting Petitioner's claim as framed. (*Id.*) Rather, the Idaho Court of Appeals determined that Petitioner was denied parole "not because he was a foreign citizen, but because he presented a high risk of reoffense and did not submit a sufficient local parole plan, which was now required in light of the INS's determination that Muraco was not deportable, and for other unrelated reasons." (*Id.*, p. 4.) That court concluded: "Any 'classification' here is not based on national origin, but on deportation status." (*Id.*)

The record in this case contains the minutes of the ICPP hearing, which note the following reasons why Petitioner was denied parole:

> It is noted that the Judge felt strongly and believed he should be in for life. The judge felt he was a fixated pedophile.
>
> Since Mr. Muraco no longer will [be] deported to Canada, it is this officer's opinion that his parole plan is unsound. He did not provide any proof or verification for his proposed residence, employment and treatment.
>
> Mr. Muraco has continued inappropriate sexual activities over a period of several years, when he was first convicted of Lewd Conduct with a Minor in 1987 in Nevada where he was sentenced to [] five (5) years[,] only to get early parole in 1988. Mr. Muraco in July of 1990 was arrested for another sex offense of Lewdness with a Minor in Nevada that was a violation of his parole, where he was once again sentenced to five (5) years in prison[,] only to receive early parole in January 1991. Mr. Muraco continued his sexual crimes, this time in Idaho and he was sentenced in October of 1994.
>
> During the parole hearing interview Mr. Muraco disclosed that he felt the reason for him committing the offense in Idaho was because he was stressed out, having just broken up from a relationship as well as money problems. Mr. Muraco later stated that this was the same reason for the sexual

**MEMORANDUM DECISION AND ORDER  7**

> offenses that occurred in Nevada. This officers feels that Mr. Muraco places blame elsewhere and will continue to abuse children if granted parole and that for the safety for society and the community he will be denied parole.

(State's Lodging E-1, pp. 5 & 10.)

Petitioner makes several arguments against the Court of Appeals' findings and conclusions. Petitioner argues that he "submitted a plan to Lewiston, Idaho, one that has been used by other inmates who remain successfully on parole." (State's Lodging G-1, p. 4.) Petitioner states further that the verification of his parole plan was contained in the computer system of Ms. Wirgau, an ICI-O counselor, and that the ICPP could have looked up the information. (Dkt. 44, pp. 2-3.)

The Court finds nothing in the record to support Petitioner's claims. There is no evidence that any other inmate was authorized for release on parole after submitting the same type of plan to the ICPP. There is no affidavit from Ms. Wirgau, or other competent evidence contained in the record to show that verification was easily accessible to the ICPP.

In sum, there is no evidence in the record supporting Petitioner's allegation that he presented an adequate plan to parole to the United States and yet was denied parole simply because he was a foreign citizen. In fact, the record reflects that he would have been authorized for parole had he been able to show that he was Canadian citizen, and not a dual-citizen. An equal protection claim lies where others similarly situated to the complaining inmate are treated more *favorably* than that inmate, but no equal protection

**MEMORANDUM DECISION AND ORDER 8**

violation arises where the complaining inmate is treated more favorably than others because of his national origin.

Even if Petitioner's claim is that he was denied equal protection because of his dual-citizenship classification, such a claim is not borne out by the record. As set forth above, there were multiple adequate reasons why Petitioner's parole into the United States was denied. These reasons apply equally to persons of United States citizenship and persons of dual-citizenship. When a person is to be paroled into the United States, the ICPP has a duty to protect the citizens of the United States against re-offenses by the parolee. Here, there was not sufficient information in the record to provide adequate reassurance that children would be protected.

Moreover, there is also no evidence contained in the record before this Court to establish that Petitioner demonstrated to the ICPP that Canada would accept him on parole, the terms upon which Canada would accept him, and that he was able to meet those terms.[1] The final notes of the ICPP hearing reflect the following:

> He asked if he can go to Canada. He was advised that Canada would not take him and the detainer was cancelled. It is noted he has dual citizenship.

---

[1] Petitioner did not present the ICPP or the courts with any written statement from Canadian officials that he would be accepted in Canada. Petitioner states that because the maximum term of imprisonment for the same crime in Canada is only 10 years, Canada could not keep him incarcerated or supervise any parole. This still does not answer the question of whether Canada would accept him on *any* terms if he were released from a United States prison. (Response pp. 3-4, Dkt. 44.)

**MEMORANDUM DECISION AND ORDER 9**

> He asked if he could go to Canada if he gets that arranged. He was advised that he can submit a SIPR [self-initiated progress report] if that happens.

(State's Lodging E-1, p. 10.) In addition, the other reasons set forth in the final notes of the ICPP further provide an adequate basis for Petitioner's parole denial.

Based on all of the foregoing, this Court concludes that the Idaho Court of Appeals' opinion is not an unreasonable application of United States Supreme Court precedent on the question of whether to apply a test of strict scrutiny or rational basis. Because nationality or citizenship was *not* the basis for denial of parole, strict scrutiny does not apply. This Court also concludes that Petitioner has not shown that the Idaho Court of Appeals' decision was based on an unreasonable determination of the evidence in the record.

### b) Review of rational basis application.

Because this Court finds no error in the Court of Appeals' conclusion that strict scrutiny does not apply to Petitioner's equal protection claims, this Court now reviews the Idaho Court of Appeals' decision to determine whether the record reflects a rational basis for the ICPP's decision to deny parole on the classification of deportability. In this regard, Petitioner argues that it is impermissible to grant parole only to sex offenders who are deportable and deny it to sex offenders who are non-deportable Americans on this basis.

The Idaho Court of Appeals rejected Petitioner's argument and determined that the ICPP did not violate the Equal Protection Clause by considering Petitioner's deportation

**MEMORANDUM DECISION AND ORDER 10**

status because the classification of deportation status is rationally related to a legitimate government objective. In reaching its decision, the Idaho Court of Appeals relied on several lower federal court opinions. (State's Lodging G-4, pp. 4-5.)

After conducting a careful search, the Court concludes that there is no United States Supreme Court precedent directly on point with the facts existing here. Therefore, lower federal court opinions are instructive to aid in determining whether the Idaho Court of Appeals opinion is an unreasonable application of broader equal protection precedent from the United States Supreme Court. *See Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

In a number of federal court cases, the status of being a non-deportable *alien* worked to each offender's disadvantage. Here, however, Petitioner is arguing that his non-deportable United States citizen status works to his disadvantage. Nevertheless, the cases remain instructive as they illustrate that the rational basis inquiry is satisfied by showing that the United States governmental entities have legitimate reasons for differing treatment.

In *McLean v. Crabtree*, 173 F.3d 1176 (9th Cir. 1999), the inmates argued that they were denied equal protection when inmates with detainers were not eligible for a sentence reduction program because they could not participate in community-based treatment programs (a requirement of eligibility) and they were categorically excluded from the sentence reduction program. *Id*. at 1180. The Ninth Circuit Court of Appeals concluded that the inmates had "fail[ed] to show that the detainer exclusion, either on its

**MEMORANDUM DECISION AND ORDER 11**

face or in the manner of enforcement, result[ed] in aliens as a group being treated differently from other persons based on their membership in the class of incarcerated aliens." *Id*. at 1185. Rather, the court determined that the statute at issue classified prisoners as those who had detainers lodged against them, and those who did not, and that there was a rational basis (increased flight risk) for the difference in treatment. *Id*. at 1185-86.

In *Lizarraga-Lopez v. United States,* 89 F.Supp. 2d 1166, 1170 (S.D. Cal. 2000), where non-citizen inmates were not permitted to take part in home or community confinement programs, the district court concluded that, under an equal protection analysis, legitimate policy interests provided adequate grounds to uphold differential treatment. That court reasoned: "the United States has no policy interest whatsoever in facilitating the re-introduction of non-citizen convicts into foreign communities." *Id*. at 169. *Accord, Santos v. United States*, 940 F.Supp. 275 (D. Hawaii 1996) (deportable aliens are not similarly situated to United States citizens); *Jimenez v. Coughlin*, 117 A.D.2d 1 (N.Y. App. Div. 1986).

Accordingly, Petitioner's claim fails under both § 2254(d)(1) and (2). There is a rational basis for requiring anyone who will be paroled into the United States to meet certain standards but to permit anyone who will be paroled into another country to be paroled without meeting the same standards, on the basis that citizens of the United States will not be subjected to living with the parolee and the United States governmental entity will not have to supervise the parolee. The Idaho Court of Appeals' decision that the

**MEMORANDUM DECISION AND ORDER  12**

parole denial satisfied a rational-basis test is not contrary to United States Supreme Court precedent interpreting the Equal Protection Clause, and nothing in the state court record suggests that the Court of Appeals' opinion is based on an unreasonable determination of the facts and evidence presented in the state court proceedings.

Finally, Petitioner's argument that he was denied equal protection because the ICPP discriminated against him based upon the type of crime he committed–a sex offense against a minor child is not supported by the facts or controlling law and is otherwise without merit. The ICPP noted that the state district judge who imposed the indeterminate life sentence "felt strongly and believed [Petitioner] should be in for life," and "felt he was a fixated pedophile." (State's Lodging E-1, p. 5.)

The type of crime a person has committed obviously plays an important role in whether that person should be considered for parole. Plaintiff, in effect, is asking that the ICPP be prohibited from using an inmate's crime to determine whether parole is appropriate. There is no basis in law or fact for this argument, and it is without merit. It is a well-established principle that "a State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment." *See Skinner v. State of Oklahoma ex rel. Williamson,* 316 U.S. 535, 540 (1942). Rather, the Equal Protection Clause is violated only where "the law lays an

**MEMORANDUM DECISION AND ORDER  13**

unequal hand on those who have committed intrinsically the same quality of offense." *Id*. at 541.[2]

In the instant action, Petitioner has not shown that treating offenders with sex offenses against children differently does not have a rational basis. Nor has he submitted any evidence that he is being treated differently from other sex offenders because the ICPP scrutinized his parole plan, his past criminal history, the likelihood of re-offense, and his remorsefulness. Accordingly, for all of the reasons set forth above, and the complete absence of evidence in the record supporting Petitioner's argument, this claim also fails under § 2254(d)(1) and (2).

---

[2] While *Skinner v. State of Oklahoma* speaks to the State's legislative power, it is analogous to the state executive branch's power and discretion to parole, granted to it by the legislature. *See also Ughbanks v. Armstrong*, 208 U.S. 481 (1908), where the Supreme Court explained that the States have the power to exempt or limit certain types of crimes from parole eligibility:

> As the state is thus providing for the granting of a favor to a convicted criminal confined within one of its prisons [when it grants parole], it may (unless under extraordinary circumstances) attach such conditions to the application for or to the granting of the favor as it may deem proper, or it may, in its discretion, exclude such classes of persons from participation in the favor as may to it seem fit. If the state choose to grant this privilege to make application to the governor for a discharge upon parole in the case of one class of criminals and deny it to others, such, for instance, as those who have been twice convicted of a felony, it is a question of state policy exclusively for the state to decide, as is also the procedure to ascertain the fact, as well as the kind or amount of evidence upon which to base its determination. It is not bound to give the convict a hearing upon the question of prior conviction, and a failure to give it violates no provision of the Federal Constitution.

*Id.* at 487-88.

**MEMORANDUM DECISION AND ORDER  14**

### 2) Claim 2 - Denial of Equal Protection Based On Inability to Be Deported

Petitioner alleges in Claim 2 that his equal protection rights were violated when he was denied parole based on an inability to be deported, which resulted in an unusual hardship being imposed on him compared to other inmates. Petitioner has not shown that the Idaho Court of Appeals' opinion affirming denial of parole was unreasonable in fact or in law, as discussed above.

When it became clear to the ICPP that Petitioner's status was a United States citizen and thus he could not be deported, Petitioner was merely subjected to the same criteria that all United States citizens seeking parole to the United States must satisfy. Petitioner's loss of the advantage of being able to be paroled without a parole plan cannot be deemed an "unusual hardship." It is beyond dispute that Petitioner committed a crime in the United States, and that there is nothing unjust about requiring him to satisfy the criteria of one its states in order to regain the privilege of living in American society. Accordingly, this claim fails under both § 2254(d)(1) and (2).

### 3) Claim 3 - Ex Post Facto Violation

Petitioner alleges in Claim 3 that an ex post facto violation occurred when the requirement of deportation, a new criteria with which he cannot comply, was imposed upon him. The ex post facto provisions found in Article 1, § 9, cl. 3 and § 10, cl. 1 of the Constitution have been interpreted to "forbid[] the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or impose[] additional punishment to that then prescribed." *Weaver v.*

**MEMORANDUM DECISION AND ORDER 15**

*Graham*, 450 U.S. 24, 28 (1981) (internal citation and punctuation omitted). This prohibition applies to administrative regulations promulgated pursuant to statutory authority. *See Garner v. Jones*, 529 U.S. 244, 250 (2000). To establish an ex post facto violation, the law or action "must be retrospective, and it must disadvantage the offender affected by it." *Id*. at 29. In certain factual circumstances, a petitioner who has been denied parole may bring an ex post facto claim.[3] In *California Department of Corrections v. Morales*, 514 U.S. 499 (1995), the Court held that an ex post facto violation occurs in the context of parole when an inmate points to rules or procedures that were adopted *after* the date of an inmate's sentence *and* he demonstrates that such rules or procedures "produce[] a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. at 509.

Petitioner argues here that the ICPP added a new requirement to parole eligibility–deportability–that was not a requirement at the time of his sentencing. There is no evidence in the record supporting his argument that, at the time of his sentencing, inmates convicted of sex offenses against minors were not subjected to the same criteria: either deportability without a parole plan, or non-deportability with a detailed parole plan. The record does not support Petitioner's ex post facto argument because the ICPP is merely requiring Petitioner to comply with long-standing criteria for parole which are a

---

[3] An ex post facto claim may be brought without a showing of a liberty interest in parole. *See, e.g., Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (A law need not impair a vested right to violate the Ex Post Facto prohibition; in other words, the presence or absence of an enforceable right is not relevant to the viability of an ex post facto claim.)

**MEMORANDUM DECISION AND ORDER  16**

sound parole plan with verification of a proposed residence, employment, and treatment, and an indication that Petitioner has shown remorse for his crime. In addition, consideration of whether Petitioner is a "fixated pedophile," his past history of committing sexual offenses against children each time he was released from prison, and his current risk of re-offense are factors the ICPP must consider in every case, because it is charged with protection of society. The record reflects that Petitioner was invited to submit a Self-Initiated Progress Report to the ICPP if he determined that Canada would accept him. Alternatively, Petitioner could have submitted a more detailed plan to be paroled here in the United States. In sum, Petitioner has not provided adequate support for his argument that deportability was a new criteria that he was required to meet in order to be paroled.

Further, Petitioner has not shown that his punishment has been increased. This factor is an essential element of an ex post facto claim. Petitioner knew that his crime carried a potential life sentence when he was charged with the underlying offense. The record makes it clear that an indeterminate life sentence was pronounced upon Petitioner and that he has not been subjected to a greater sentence than was permitted by law or pronounced by the presiding state judge.

In rejecting the Petitioner's arguments, the Idaho Court of Appeals relied on *United States v. Addonizio*, 442 U.S. 178, 188 (1979) for the proposition that "[t]he decision as to when a lawfully sentenced defendant shall actually be released has been committed . . . to the discretion of the Parole Commission. . . [T]he judge has no

**MEMORANDUM DECISION AND ORDER  17**

enforceable expectations with respect to the actual release of a sentenced defendant. . . ." (State's Lodging G-4, p. 6.) Idaho's scheme is similar to the federal scheme. *See Nickerson v. Idaho*, 892 P.2d 493, 495 (Idaho Ct. App. 1995) ("The determination of whether an inmate has served a commensurate amount of his sentence such that he is eligible for parole rests with the Department of Corrections, not with the sentencing judge.")

As noted above, the state district judge indicated that Petitioner may be a "fixated pedophile," warranting life imprisonment in order to protect society. Petitioner's history has been to commit new sex offenses upon his release from incarceration. The record reflects that Petitioner was aware that he had a life sentence imposed on the date of sentencing. To enforce that life sentence when the ICPP is not satisfied that Petitioner has a specific plan for parole, and will be able to overcome his patterns of the past, is not an ex post facto violation. Based on all of the foregoing, Petitioner has not shown that the decision of the Idaho Court of Appeals contravened § 2254(d)(1) or (2) as a violation of the Ex Post Facto Clause. As a result, Petitioner is not entitled to habeas corpus relief.

### PETITIONER'S MOTION FOR DECLARATORY JUDGMENT

Petitioner requests declaratory relief in this case. Based on the foregoing, declaratory relief in Petitioner's favor is not warranted because his claims are without merit. As a result, the motion will be denied.

## PETITIONER'S SUBMISSION OF FACTS REGARDING NEW PAROLE HEARING

Petitioner recently had another parole eligibility hearing. He alleges that at least one of the ICPP Commissioners believed Petitioner had cured the deficiencies preventing his parole into the United States that were discussed in the previous parole hearing. Petitioner was again denied parole by the ICPP, and he was directed to submit a Self-Initiated Progress Report. His argument is that it is now clear that the ICPP is denying parole based on national original because he, in fact, presented a viable plan to be paroled into the United States. However, he has not yet made that argument to the Supreme Court of Idaho; thus, the outcome of that hearing cannot be adjudicated in this matter for failure to exhaust state court remedies. As a result, this Court cannot considered the newly-submitted information.

## ORDER

**IT IS ORDERED:**

1. Respondents' Motion for Summary Judgment (Docket No. 41) is GRANTED.

2. Respondents' Motion for Extension of Time to File Motion for Summary Judgment (Docket No. 39) is GRANTED. The Summary Judgment Motion is considered to be timely filed.

3. Plaintiff's Motion for Declaratory Judgment (Docket No. 38) is DENIED.

4. Plaintiff's Petition for Writ of Habeas Corpus (Docket No. 1) is

    DISMISSED with prejudice.



DATED: **September 24, 2010**.

*[signature]*

Honorable Larry M. Boyle
United States Magistrate Judge